# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TRACY S. BAKER,**

      **Plaintiff,**

                                **Case No. 2:18-cv-970**

      **v.**                         **CHIEF JUDGE EDMUND A. SARGUS, JR.**

                                **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tracy S. Baker brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

disability insurance benefits and supplemental security income.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors

(ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), and the

administrative record (ECF No. 7).  No reply has been filed.  For the reasons that follow, it is

**RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the

Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

On January 29, 2015, Plaintiff protectively filed applications for supplemental security

income and disability insurance benefits, alleging that she had been disabled since January 1,

2015.  (R. at 367–83.)  Plaintiff's applications were denied initially and upon reconsideration.

(R. at 259–65, 268–79.)  Plaintiff sought a *de novo* hearing before an administrative law judge.

(R. at 281–84.)  Administrative Law Judge Timothy Gates ("ALJ") held a hearing on July 28,

2017, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 85–112.)

On December 20, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within

the meaning of the Social Security Act.  (R. at 65–77.)  On June 28, 2018, the Appeals Council

denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 3–9.)  Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY[1]

Plaintiff testified at the administrative hearing that she has a high school diploma and

attended joint vocational school for child care and obtained her commercial driver's license.  (R.

at 90–91.)  Plaintiff previously worked as an inspector of cosmetic parts, as a truck driver, as a

dryer feeder of wood, and worked logistics in a warehouse.  (R. at 91–95.)

Plaintiff stopped working around the time she was diagnosed with breast cancer in early

2015.  (R. at 95–96.)  Plaintiff underwent chemotherapy and radiation treatment, which ended in

mid-October of 2015.  (R. at 96–97.)  This treatment made Plaintiff's fingers and feet numb and

she "can't remember stuff."  (R. at 97.)  Plaintiff broke her elbow one day when her feet were

numb and she fell.  (R. at 99.)  Plaintiff felt that she was unable to work during the months that

she underwent cancer treatments because the chemotherapy made her sick.  (R. at 98.)  She is

currently taking a hormone medicine, Anastrozole, to block the cancer.  (R. at 97.)  Plaintiff

testified that a side effect of the medicine is that she becomes emotional and she used to cry all

of the time, but she denied that the medicine currently made her cry.  (*Id.*)  Plaintiff testified that

she also takes Prozac and that it helps.  (R. at 97–98.)

---

[1] The undersigned limits the consideration of the evidence and the administrative decision to the
issues raised in the Statement of Errors.  Additional evidence is addressed in the analysis of this
decision.

Plaintiff testified that she still experiences difficulty with her arms and hands such as difficulty flipping pages and opening cheese wrappers. (R. at 98.) Sometimes there is pain and sometimes there is tingling and Plaintiff's right hand will go numb. (*Id.*) This numbness happens all of the time. (R. at 99.) Plaintiff testified that she still cannot bend all of the way her right elbow that she broke when she was undergoing cancer treatment, that she can lift maybe ten pounds with it, and that it hurts and aches. (*Id.*) When Plaintiff tries to run the sweeper she has to take breaks because of her elbow. (*Id.*) Plaintiff testified that her neuropathy also makes it difficult because she cannot feel what she is doing. (R. at 100.) The neuropathy in her feet causes them to feel numb and to hurt at night. (R. at 101.) She takes gabapentin for the neuropathy, which made her sleepy when the dosage was increased. (R. at 101, 103.)

Plaintiff is able to perform household chores such as dishes and laundry "with a little trouble" and help from her mother who lives with her. (R. at 99–100.) Plaintiff's mother who reminds Plaintiff every day throughout the day of appointments and taking medicine because Plaintiff does not remember since her cancer diagnosis. (R. at 100.)

Plaintiff goes to water therapy for arthritis in her left knee. (*Id.*) Plaintiff also has diabetes for which she takes three different kinds of insulin and Metformin. (R. at 100–01.) She has asthma and uses a regular inhaler and has a rescue one when needed. (R. at 102.) Plaintiff suffers from depression. (R. at 102.) She uses Prozac for her depression, which has helped even though she still gets depressed about once a week and does not want to get off the couch or do anything. (R. at 102–03.) Plaintiff saw someone in early 2016 for memory problems but her appointment to see a psychologist at the Stefanie Spielman Breast Cancer Center was cancelled for an unknown reason and Plaintiff never went back. (R. at 104.)

Plaintiff sometimes drives short distances but basically her mother drives her all of the time now.  (*Id.*)

### III.    MEDICAL RECORDS

**A.    John Robertson, D.O.**

On January 30, 2015, John Robertson, D.O., Plaintiff's treating family practitioner, completed a statement on a form related to Plaintiff's claim for short term disability.  (R. at 1089–93.)  He reported the start date for her disability as January 27, 2015, when she underwent a biopsy of her left breast and that she would begin radiation on January 30, 2015, at the James Cancer Hospital.  (R. at 1093.)  Dr. Robertson opined that Plaintiff could return to work full-time by July 27, 2015 or within two to six months.  (R. at 1093.)

On February 19, 2015, Dr. Robertson completed a certification in connection with Plaintiff's request for leave under the Family and Medical Leave Act.  (R. at 1041–44.)[2]  Dr. Robertson noted that he treated Plaintiff on four occasions between December 31, 2014, and February 13, 2015.  (R. at 1042.)  He explained that Plaintiff was recently diagnosed with breast cancer and was referred to the James Cancer Hospital.  (*Id.*)  Dr. Robertson reported that Plaintiff was currently undergoing chemotherapy, which leaves her fatigued and nauseated.  (*Id.*)  According to Dr. Robertson, Plaintiff would be incapacitated for a single continuous period of time due to her medical treatment, including time for treatment and recovery, between January 29, 2015 and August 1, 2015.  (R. at 1043.)  He stated that her prognosis was to be based on the outcome of her chemotherapy.  (*Id.*)

---

[2] Duplicate copies of this statement appear in the record.  (*Compare* R. at 994–97, *with* 1041–44.)  For ease of reference, the undersigned will cite to only the more legible copy.  (*See* R. at 1041–44.)

**B.      Bruce Merwin, M.D.**

On September 29, 2015, Bruce Merwin, M.D., Plaintiff's treating radiation oncologist, completed a medical source statement.  (R. at 2697–2700.)  Dr. Merwin noted that Plaintiff's underwent surgery and chemotherapy in July 2015 following diagnosis of invasive ductal cancer of her left breast.  (R. at 2698.)  Dr. Merwin stated that Plaintiff's neuropathy resulting from her chemotherapy and diabetes was palliated with Neurontin.  (*Id.*)  Dr. Merwin opined that Plaintiff was unemployable because the pain made it difficult for her to stand on her feet and use her fingers and hands and that she is a risk of injuring herself or others at work.  (R. at 2698–99.)  Dr. Merwin further noted that Plaintiff was at risk for dropping objects and that she cannot tolerate working because of her painful neuropathy caused by diabetes and prior chemotherapy.  (R. at 2699.)  According to Dr. Merwin, "I believe she is unemployable and will never be employable." (*Id.*)

## IV.      ADMINISTRATIVE DECISION

On December 20, 2017, the ALJ issued his decision.  (R. at 65–77.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2020. (R. at 67.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

engaged in substantially gainful activity during the period from her alleged onset date of January 1, 2015. (*Id.*)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of stage 2 left breast cancer in remission; osteoarthritis/degenerative joint disease of her knees; diabetes; asthma; obesity; history of right elbow fracture; and mild sensory peripheral neuropathy in the arms and hands. (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 68–69.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for four hours in a workday, and sit for six hours in a workday. She can frequently reach with her left upper extremity, frequently handle with her right hand (beginning May 8, 2016), frequently finger with both hands, and occasionally push and pull with her bilateral upper and lower extremities. She can frequently balance and stoop, occasionally climb ramps and stairs, and occasionally kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She must avoid working at unprotected heights and around moving mechanical parts. She can no more than occasionally he exposed to dust, odors, fumes, and pulmonary irritants.

(R. at 69–70.) In reaching this determination, the ALJ assigned "partial weight" to the assessments of Dr. Robertson and Dr. Merwin. (R. at 74.)

---

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs exist in significant numbers the national economy that she can perform. (R. at 75–76.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 77.)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

# VI.    ANALYSIS

Plaintiff advances one contention of error.  Plaintiff asserts that the ALJ failed to provide "good reasons" for not assigning controlling weight to the treating source opinions of Dr. Merwin and Dr. Robertson.  (ECF No. 12.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).[4]  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[4] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017."  *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)).  Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.
> *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ assigned only "partial weight" to the opinions of Dr. Merwin and Dr. Robertson, reasoning as follows:

> The question of disability is a matter reserved for the Commissioner (20 CFR 404.1527(d) and 416.927(d)). While normally controlling weight would be given to an opinion of disability from a treating physician, it is not so entitled if it is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with other substantial evidence of record (20 CFR 404.1527(c)(2) and 416.927(c)(2)). In this case, the undersigned gives partial weight to the assessments of Dr. Robertson and Dr. Merwin, as, at the time they were made, they were reasonable given that the claimant was then receiving chemotherapy or radiation therapy. However, treatment was completed well within a year, and the above-summarized post-treatment record does not document the frequency and intensity of symptoms alleged. Additionally, Dr. Robertson and Dr. Merwin did not assess function-by-function capabilities. According, the undersigned cannot give their assessments greater weight.

(R. at 74.) For the reasons that follow, the Undersigned concludes that the ALJ did not err in his consideration and weighing of these opinions.

As an initial matter, the ALJ reasonably rejected the conclusion of Dr. Merwin that Plaintiff is disabled and "unemployable and will never be employable" (R. at 2699) because such

a determination is specifically reserved to the Commissioner. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner); *Smith*, 2019 WL 764792, at *7 (finding that because "the issue of disability is a legal, not a medical issue" and reserved to the Commissioner, "opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference") (citations omitted).

The ALJ also reasonably discounted the opinions of Dr. Robertson and Dr. Merwin issued on February 19, 2015 and September 29, 2015, respectively, because Plaintiff was in the middle of receiving chemotherapy or radiation treatment, such treatment was completed within a year, and the post-treatment record did not document the frequency and intensity of symptoms alleged. (R. at 74.) While Plaintiff disagrees with this assessment (ECF No. 12 at 9), the record supports the ALJ's reasoning. Plaintiff was diagnosed with breast cancer in January 2015 began chemotherapy in February 2015. (R. at 71, 963–64, 970, 979, 981, 983, 985.) She completed chemotherapy in May 2015 (R. at 72, 438, 1371–72, 1375) and a mammogram and ultrasound revealed findings consistent with a good response to chemotherapy (R. at 72, 1374.) On June 17, 2015, Plaintiff underwent a lumpectomy and, due to inadequate clear margins, she underwent a partial re-excision lumpectomy on July 13, 2015. (R. at 72, 438, 1809–10, 2246–47.) In July 2015, Plaintiff did not complain of any numbness in her hands or feet. (R. at 2679–81.) On August 2015, Plaintiff complained of numbness and tingling in her hands and feet but was doing well post-operatively. (R. at 2627, 2632, 2635–36, 2690.) Later that month, Plaintiff began radiation therapy, which was completed by October 19, 2015. (R. at 2690–95, 3217–18.)

Plaintiff, however, contends that the record reveals that she suffered from neuropathy following her cancer treatment thereby supporting Dr. Merwin's opinion that her problems

stemmed from neuropathy and supporting greater restrictions. (ECF No. 12 at 10–12.)

Plaintiff's contention is not well taken. The ALJ carefully considered the record and detailed Plaintiff's medical history as follows. (R. at 70–75.) On October 23, 2015, Plaintiff reported worsening neuropathy and musculoskeletal pain but overall was doing well. (R. at 3272–73.) On November 17, 2015, Plaintiff denied extremity weakness or numbness and a physical examination revealed normal findings, including normal muscle strength in all extremities. (R. at 3218.) In December 2015, Plaintiff remained on anastrozole, had no new complaints, and was doing very well. (R. at 3288.) In February 2016, Plaintiff reported worsening neuropathy and musculoskeletal pain but was overall doing well with decreasing fatigue and was trying to exercise more even though her neuropathy limited her ability to exercise. (R. at 3298–99.) A physical examination on the same day revealed normal range of motion and strength in all extremities with no neurological deficits. (R. at 3301.) Plaintiff's prescription for gabapentin was increased due to no good relief of neuropathy symptoms. (R. at 3303.) On May 3, 2016, Plaintiff reported "some numbness" in her hands and feet and that her neuropathy remained unchanged. (R. at 3329.) However, she denied problems with buttoning or balancing and reported "some improvement in her symptoms" after taking gabapentin. (R. at 3329, 3334.) She reported occasional left knee pain, denied much arthralgias, and stated that "she is feeling well overall[.]" (R. at 3329.) Plaintiff's fatigue had improved after recovering from radiation therapy and she "is up and about most of the day." (*Id*.) A physical examination on the same day revealed normal range of motion in all four extremities with normal strength and no focal neurologic deficit. (R. at 3331.)

On May 8, 2016, Plaintiff fell in her driveway, fractured her right elbow, and underwent surgery. (R. at 3312, 3320–21.) Following surgery, Plaintiff reported in July 2016 that she was

doing well with minimal pain. (R. at 3390.) While her elbow was stiff, Plaintiff reported

improved range of motion. (*Id.*) Plaintiff's diabetes was controlled. (R. at 3391.) On August

12, 2016, Plaintiff reported that her elbow was "pretty functional" and denied any pain. (R. at

3394.) Her diabetes remained controlled. (*Id.*) A physical examination on August 26, 2016

revealed normal range of motion of all four extremities with normal strength. (R. at 3566.) A

medical review of Plaintiff's systems in October 2016, revealed normal respiratory,

musculoskeletal, and neurologic functioning and she ambulated without difficulty. (R. at 3480–

81, 3486.) Plaintiff reported some improvement in her neuropathy symptoms after continuing on

gabapentin. (R. at 3569.) In November 2016, Plaintiff was able to correctly perform physical

therapy exercises with no change in pain, made good progress towards goals, good tolerance to

treatment, and a good prognosis. (R. at 3712.) In January and April 2017, Plaintiff reported

decreased sensation in her feet, but she ambulated without difficulty. (R. at 3531, 3606.) While

Plaintiff reported numbness and tingling in her arms and hands on April 12, 2017 (R. at 3621),

electrodiagnostic testing in May 2017 revealed only mild delay in all sensory nerves tested in her

arms and hands with no evidence of ongoing carpal tunnel syndrome, ulnar nerve compression,

cervical radiculopathy, brachial plexopathy, or proximal nerve problem. (R. at 3584–85.) There

was no evidence of underlying cervical radiculopathy or proximal nerve problem. (R. at 3585.)

In short, this record does not support greater restrictions imposed by the ALJ and the ALJ

reasonably discounted the opinions of Dr. Robertson and Merwin based on this record. *See*

*Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.[5]

Plaintiff nevertheless insists that the opinions of Edward Westerheide, M.D., Plaintiff's

---

[5] The ALJ also noted that Plaintiff's level of activities was inconsistent with the level and
persistence of symptoms that she alleged. (R. at 75.) *See* 20 C.F.R. § 404.1527(c)(6).

treating orthopedic surgeon, and Jennifer Schaller, a certified nurse practitioner ("CNP"), support

greater physical restriction than those accounted for by the ALJ.  (ECF No. 12 at 11–12.)  The

Undersigned disagrees.  The ALJ specifically considered Dr. Westerheide's opinion from

January 2017 that restricted Plaintiff from lifting no more than ten pounds due to her elbow

condition.  (R. at 74, 3547.)  As the ALJ noted, this assessment was "relatively shortly after

surgery, and there is no indication that such a limitation was expected to last for an extended

period."  (R. at 74.)  Notably, the record detailed above supports the ALJ's conclusion that

Plaintiff improved after surgery.  (*Id.*)  Accordingly, the ALJ reasonably assigned "no significant

weight" to Dr. Westerheide's assessment (*id.*).  *See Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d

at 406; *Wilson*, 378 F.3d at 544.

The ALJ also considered and discounted CNP Schaller's opinion, reasoning as follows:

> In January 2017, Jenifer Schaller, a certified nurse practitioner (CNP) opined that
> the claimant was unable to work due to her breast cancer, long-term effect of cancer
> treatment, and right elbow fracture (Exhibit 34F at 35).  A CNP's medical opinion
> is not included among the acceptable sources of medical evidence defined in the
> regulations (20 CFR 404.1527(f) and 416.927(t)).  For that reason, information
> provided by a CNP, such as Ms. Schaller, does not equal in probative value reports
> from those sources shown as being acceptable such as licensed physicians and
> osteopaths.  Additionally, the question of disability is a matter reserved for the
> Commissioner (20 CFR 404. 1527(d) and 416.927(d)).  Moreover, the above-
> summarized record documents good results from both cancer treatment and right
> elbow surgery with substantial improvement and no support for the marked
> limitation suggested by Ms. Schaller's opinion.

(R. at 75.)  The Undersigned finds no error in this analysis.  *See Bass*, 499 F.3d at 511; *Smith*,

2019 WL 764792, at *7; *Rollins v. Berryhill*, No. 3:18-cv-00252, 2019 WL 2537749, at *3

(M.D. Tenn. June 20, 2019) (finding that the ALJ properly considered nurse practitioner's

opinion and adequately explained his reasoning for assigning it "some weight" because a nurse

practitioner is not an acceptable medical source and must only 'generally explain the weight

given to opinions'" of "other sources") (citing 20 C.F.R. § 404.1527(f)); *Hill v. Comm'r of Soc.*

*Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014)).

Finally, Plaintiff contends that the Court should reject the ALJ's discounting of the opinions of Dr. Robertson and Dr. Merwin on the additional basis that these doctors did not provide function-by-function assessments.  (ECF No. 12 at 12–13.)  However, the ALJ did not err when discounting these opinions because they failed to provide such assessments.  *See* 20 C.F.R. § 404.1527(c); *Smith*, 2019 WL 764792, at *7 (finding that the ALJ reasonably determined that a treating physician's opinion was not well supported by record evidence where, *inter alia*, "the doctor did not provide a function-by-function analysis demonstrating the inability to perform any type of gainful activity"); *McCoy v. Comm'r of Soc. Sec.*, 356 F. Supp. 3d 704, 711 (S.D .Ohio Nov. 29, 2018) (concluding that the ALJ satisfied the requirement that he give "good reasons" before discounting the treating physician's opinion where, *inter alia*, the ALJ explained that the treating physician's opinion "lacked a function-by-function analysis and failed the supportability and consistency factors enumerated in 20 C.F.R. § 404.1527(c)").  Accordingly, for all of these reasons, the ALJ reasonably discounted the opinions of Dr. Robertson and Dr. Merwin and substantial evidence supports the ALJ's conclusion.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

# VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  July 18, 2019                                 s/ *Elizabeth A. Preston Deavers*
                                                       ELIZABETH A. PRESTON DEAVERS
                                                       CHIEF UNITED STATES MAGISTRATE JUDGE